Oldham, J. The pleas of the defendant, to which exceptions are / taken, are pleaded in the form of special traverses, but do not possess j the essential requisites of that class of pleas. The use and object of | a special traverse are explained and Refined in Stephens’ Pleading, j 199 et seq. It is adopted, first, when a simple or positive denial may j be improper by its opposition to some general rule of law; and, \ secondly, when the issue of fact, upqn a common traverse, might \ also involve an issue of law which it would be desirable to develope j and submit to the judgment eof the court. The-inducement of the \ special traverse always contains either new affirmative matter, in- ! consistent with the facts pleaded by the opposite party, or a repetition of the allegations antecedently made by the same party, in some pre-i vious stage of ihe pleading, and confessed and avoided by his oppo- - ■ ;nent. The facts contained in the inducement are pleaded as an ar- ' gumentative denial of the allegations to which they are opposed, and hence, to avoid the rule against argumentative pleading, the absque hoc is introduced for the purpose of a direct and positive denial. If the inducement be faulty in any respect, as for example, in not containing a sufficient answer in substance, or in giving an answer by way of direct denial, or by way of confession and avoidance, the opposite party may demur to the whole traverse. The inducement in each of the pleas under consideration contains a direct denial of the breaches assigned in the declaration, and, according to the rule above laid down, would be held bad upon demurrer at common law. The objection, however, we conceive goes to the form and not to the substance of the plea. The inducement being a direct denial, would be a good plea, without the addition of the absque hoc. The latter, which is always used for the purpose-of direct denial, is but a repetition in other words of the inducement. Substantially, the plea twice denies the averment in the declaration, and is bad in point of form, but in substance is a common traverse. We are, therefore, of opinion, that the Circuit Court did not err in refusing the motion for judgment non obstante veredicto, and in arrest of judgment. The Court below properly ruled, that the onus of proof under the issues upon the pleas to the first, second, and third breaches assigned in each count of the declaration, was upon the defendant. So this court held in Logan v. Moulder, 1 Ark. Rep., upon a similar covenant to those declared upon in the present case. The next question to be considered, is, whether the Circuit Court properly refused the plaintiff’s motion for a new trial. Three grounds are assumed in the motion: that the finding of the court was contrary to law; 2, that it was contrary to the evidence; and, 3, that the defendant was permitted to introduce incompetent and illegal testimony. The testimony objected to, consisted of the original affidavits, and the proceedings thereon of the Register and Receiver of the Land-office at Little Rock, in regard to the Lovely claims of Neal and Smoot, referred to in the covenants sued upon, and an extract from the abstract of settlers’ claims adjudicated at the Land-office at Little Rock, showing the confirmation and allowance of the claims. The objection made to this testimony is, that, inasmuch as no application is shown to have been made by Neal and Smoot, or any person for them, to enter or locate lands in the Arkansas Land District, the Register and Receiver at Little Rock were not authorized to administer any oath, or take any affidavit, touching the claims, and had no authority to adjudicate upon them. That, to give them jurisdiction, a specific application to locate some particular lands in the district, by virtue of the claims, was necessary. The act of Congress under which the donations were claimed, provides “that the Register and Receiver of the Land-office to which application may be made to enter the lands, shall be authorized to take the proper testimony of such actual settlement, and subsequent removal, as in cases of pre-emption heretofore granted to actual settlers,” &c. This statute does not contemplate a formal written application, designating the particular lands to be located, as a necessary prerequisite to authorize the Register and Receiver to take the proof and adjudicate the claim. The production of witnesses by the claimant, with the request that their testimony be taken, and the claim allowed, was certainly a sufficient application to enter the lands to which the claimant might be entitled in the particular Land District. The claimant had no right to enter any lands until the Register and Receiver should, upon the testimony which he might adduce to them, decide that he was entitled to the benefits of the act of Congress, in consequence of having complied with its requisitions. His right of entry, before a decision by the Register and Receiver, was inchoate, but, upon their adjudication in his favor, became complete, and fully authorized him to make an entry or location of the land claimed according to the provisions of the law under which his interest accrued. It was surely a very useless act, to make an application to locate a particular tract of land as a prerequisite to the jurisdiction of the Register and Receiver, to take the necessary testimony and determine whether the claimant came within the provisions of the act of Congress, and entitled to the land granted by the act. Such, we conceive, was never the practice. We are well satisfied that the Register and Receiver of the Land-office at Little Rock, upon the submission of the proof to them,'by tire claimants, did have jurisdiction, and were fully authorized by law to decide whether they were entitled to the land claimed by them. It is objected, that the testimony respecting the claim of Smoot, purports to have been sworn to before the Register only. This objection is not sustained by the record. It purports-to have been taken before both the Register and Receiver; but it is not signed by either of them. The proof was taken for the satisfaction of the Land-officers themselves 5 their action upon it and allowance are fully satisfactory that it was sworn to. The omission to sign it; by the officers; was a mere irregularity; not affecting the validity of their acts or their jurisdiction. It is also objected to the claim of Neal; that the affidavit of the claimant himself was not taken. The act of Congress does not designate«what proof shall be necessary to support the claim; or require the affidavit of the claimant. That is a matter of practice left to the judgment and discretion of the Commissioner of the General Land-office for regulation. Congress; by the act; conferred the right to the claimant; and established a tribunal for its determination; leaving the rules of practice to be prescribed by the Commissioner. The instructions which he issued to the Land-officerS; by which they were required to conform their action; could be modified or changed; or portions dispensed with, at his pleasure, to meet the exigencies of particular cases. As a means for the prevention of fraud and imposition upon the government, the Commissioner “advised the Register and Receiver to require of each settler claiming a donation, a detailed statement of all the facts upon which his claim was founded.” Instructions, Sfc. vol. 2., 413. But this statement was frequently dispensed with, “when it was found impracticable to procure the settler’s affidavit, and satisfactory evidence was produced of such impracticability,” and, on the 25th of June, 1832, the instructions were so modified, ib., 464. It appears from the proof given in Neal’s case, that he was an aged man, and afflicted with disease, and consequently unable to attend the Land-office in person. The two last objections are, even if well taken, mere irregularities in the proceedings of the Land-officers, not affecting their jurisdiction over the subject matter. By the act of Congress, they were clothed with exclusive authority to determine the rights of claimants to donations under the law. The judgments of a court of exclusive jurisdiction, if within their jurisdiction, are binding every where, and cannot be collaterally questioned, however erroneously they may have proceeded. Such judgments are impeachable only in an appellate and revising tribunal, having supervising control over the inferior [court. It is not for this court to say that the acts of the Land-officers are void, when within their jurisdiction, because they may have failed to sign an affidavit taken and sworn to before them, or allowed a claim upon testimony which we may conceive was insufficient. The instructions of the Commissioner, to the Register and Receiver, vol. 2, 414, required that the decision in each application should be endorsed under their signatures. In the cases now before*us, the Land-officers have endorsed one, “confirmed 11th April, 1829,” and the other “examined and confirmed the 2d of Feb’y, 1832,” and signed them officially. These endorsements were made under the directions of the Commissioner of the General Land-office, Instructions', &c., vol/2, 414, and are satisfactory evidence that the decisions were in favor of the right of claimants to the donation granted by the act of Congress to the persons coming within the provision of the act: The objection urged to the paper purporting to be an extract from the abstract of settlers’ claims adjudicated at the Land-office at Little Rock, A. T., under the act of Congress of May, 1828, and Jan., 1829, is, that it is not the best evidence, being but secondary, the records of the Land-office being the primary and best evidence. The Rev Slat., chap. 59, sec. 6, enacts that “copies of entries made in the books of any Laird-office of the State, or papers filed therein, certified by the Register and Receiver, shall be evidence to the same extent as the original books or papers would be, if produced.” The object of this Statute is so obvious that it need not be stated. Under its provisions, such copies are made primary, and not secondary, evidence. Under our views of the law above expressed, as applicable to the testimony introduced by the defendant, we are of opinion that the evidence offered by him established the issues on his part under the pleas to the first, second and third breaches assigned in each count of the declaration, and that ho was entitled to a verdict upon those issues, unless his proof so given was met and overturned by that on the part of the plaintiff. It does not appear, from the testimony, that Oakley ever made any application or offer to locate the claims in the Arkansas Land District, in which they had been adjudicated, or that the allowance of the claims, by the Register and Receiver for that office, had ever been set aside. On the 16th of March, 1837, he made a written application, as attorney for Smoot, to locate his claim at the Land-office at Washington, in the Red River Land District; and, on the 23d day of May, 1838, he made a similar application, in the same Land-office, to locate Neal’s claim. Action on both applications was suspended, by the Register and Receiver, until the 20th of Nov. 1840, when the applications were refused, and the reasons endorsed by the officers, which were as follows: 1st. Because they were unwilling to act upon copies when the originals were in existence; 2d. Because they were not satisfied with tire proof; 3d. Because they had no acquaintance with the claimants or witnesses; 4th. Because they had no knowledge whether the claims were founded in fraud or not. One of the covenants declared upon, was dated August the 26th, 1834, and the other August the 27th, 1834. At that time the act of Congress and instructions under it most clearly did not authorize the location of a claim in one Land District, upon the proof taken before, and an adjudication made by, the officers of another. The question whether the law authorized the Commissioner to permit such a location, does not arise. The first authority given for such a location, is a letter from the Commissioner, to tire Register and Receiver at Washington, dated October 4th, 1836, and induced by a letter received by him from the plaintiff’s intestate, upon the subject, perhaps in reference to the claims now under consideration. In that letter, the Commissioner says: “A claim having been proved at any other Land District, will not prevent the location of that claim in your district, if you are satisfied with the testimony already taken; if you are not satisfied with the testimony, additional proof must be made, until you are satisfied,” Instructions, &c., 2 vol. 527. The claimant, then, by attempting such a location; waives the decision already pronounced in his favor and submits his claim to a new forum; which is not bound by the previous adjudication upon the proof taken at the first Land-office; which testimony thereby becomes; and has only the force and effect of depositions taken in support of the claim. Did Woodruff covenant that, should the Commissioner of the General Land-office, at any subsequent time, by instructions, permit locations at one office upon proof taken at another, that Oakley should have the privilege of waiving the adjudications already made in favor of the claimants at the Land-office at Little Rock, withdraw the proof from that office, submit.it to another, for a new decision, and that he would be responsible in case it should be rejected? Most certainly not. Woodruff covenanted in reference to the facts, law and instructions, as they stood at the dates of the contracts. His rights are not to be impaired, or his liability extended, by instructions subsequently given, which were not in contemplation between the parties at the time. In the recitals of his bonds, he states that the claims had been proven up at the Land-office at Little Rock; the testimony establishes that fact. He covenants that the donation claims were legal and valid, and that each of the claimants were lawfully entitled to enter therewith the quantity of three hundred and twenty acres of land. The decisions of the Register and Receiver of the Land-office at Little Rock are conclusive upon these points, until annulled and set aside by competent authority. He did not covenant that Oaldey might withdraw the testimony from the Land-office at Little Rock, and submit it to the Register and Receiver at Washington, and, in case it should prove unsatisfactory, that he would supply any additional proof necessary to establish the claim in that office. The Land-officers at Little Rock having already acquired jurisdiction of the claims, and decided them in favor of the claimants, his covenants to furnish further proof, should any be necessary, can only be construed to extend to the action of that Land-office. For instance, if the Commissioner should deem the testimony insufficient to warrant the decisions, and require the officers to take additional testimony, that he would furnish it. The decisions made by the Register and Receiver at Little Rook still remain in full force, have never been reversed, nor has additional proof been required to sustain them. These facts are conclusive upon the issues made up by the pleadings. ( There is no doubt, from the testimony, that, had Oakley made application to locate the claims in the Arkansas Land District, it would have béen permitted upon the adjudications made in the office for that district. Therefore, when he took the claims to the Land-office at Washington, and applied to enter them in the Ned River District, he did so upon his own responsibility, and at his own peril. We are of opinion that there is no error in the judgment of the Circuit Court, and the same is therefore affirmed.